IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Criminal No. 13-01152 WJ

GABRIEL MIRABAL,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS FRUITS OF ILLEGAL SEARCH OF STORAGE UNIT

THIS MATTER comes before the Court following a hearing on Defendant's Motion to Suppress Fruits of Illegal Search of Storage Unit, filed December 12, 2014 **(Doc. 188)**.  Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and thus, it is DENIED.

## BACKGROUND

Defendant Mirabal ("Mirabal") is the lead defendant in a narcotics conspiracy which operated from March 2012 to April 2013 ("Mirabal Drug Trafficking Organization" or "Mirabal DTO").  It is believed that Defendant was involved in the trafficking of cocaine hydrochloride (powder cocaine) and cocaine base (cocaine base) and the cooking of the former into the latter for later sale.

In this motion, Defendant moves to suppress evidence gathered as a result of an allegedly unlawful search of a storage unit located at Global Storage, 7701 Bridge SW, Albuquerque, New

Mexico.[1]  Defendant challenges the face of the affidavit that supported the search warrant, contending that the affidavit did not provide sufficient evidence to support a finding of probable cause to search the storage unit. Defendant also contends that law enforcement officers cannot rely on the good faith exception for law enforcement officers because the good faith presumption cannot be applied where an affidavit is so lacking in indicia of probable cause that official belief in its existence was unreasonable.

The Fourth Amendment protects people against unreasonable seizures of "their persons, houses, papers, and effects." U.S. Const. amend. IV; *Soldal v. Cook County*, 113 S. Ct. 538, 544 (1992).  Under the Fourth Amendment, "an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause . . . from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." *Nathanson v. United States*, 290 US 41, 47 (1933). When determining whether there is sufficient probable cause for the issuance of a warrant, the question for the reviewing court is whether the magistrate judge had a substantial basis for determining that, in light of the totality of the circumstances set forth in the affidavit before him, there was a fair probability that contraband or evidence of criminal activity would be found in a given place. *Illinois v. Gates*, 462 U.S. 213 (1983).

Further, a finding that a defendant's Fourth Amendment right has been violated does not necessarily mean that the evidence found as a result of the illegal search will be excluded from evidence at trial. *See Gates*, 462 U.S. at 223.  It is well established that if the officers who swore out the affidavit and who executed the warrant were acting in good faith, the exclusionary rule will not apply. *See U.S. v. Leon, et al.*, 468 US 897 (1984). The "good faith" exception to the exclusionary rule turns on the objective reasonableness of an officer's reliance on an invalidated

---

[1]  The Court denied Defendant's previous motion to suppress all statements and physical evidence (namely, an assault rifle and drugs) that were recovered following a stop and search of Defendant's vehicle.  Doc. 197 at 35-36.  The Court also denied Defendant's motion to suppress fruits of a Title III wiretap.  Doc. 197.

search warrant. *Id.* at 922 (the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.)

## DISCUSSION

As a result of the investigation into the alleged Mirabal DTO, law enforcement requested a search warrant for Mirabal's storage unit located at 7701 Bridge SW, Albuquerque, New Mexico and swore out an affidavit in support of the application for the warrant, which was signed by United States Magistrate Judge Robert H. Scott on April 22, 2013.

Defendant contends that the application is deficient in factual sufficiency to support a finding of probable cause, pointing out that the 13-page affidavit (attached as Exhibit A to the motion) references the storage unit only three times. The first mention of the storage unit occurs at ¶22 indicating that Defendant told Veronica Anaya on June 26, 2012 that he rented the storage shed for his GMC red pickup truck.[2] The second reference is at ¶29, stating that law enforcement believed the truck was taken out of storage to have work done on it on February 13, 2013 and then returned to the unit after March 7, 2013:

> Intelligence obtained from the interception of Mirabal's telephone around this date indicated that Mirabal removed the truck from storage to have work performed by Audio Express on a sound system in this vehicle. . . . Additional intercepted conversations between Mirabal and an Audio Express employee indicate that this truck was still at Audio Express through March 7, 2013. Agents believe that Mirabal may have placed the red pickup truck back in this storage sometime after March 7, 2013. This vehicle has not been observed at Mirabal's residence since March 7, 2013.

Doc. 188-1 at 11, ¶29. The *third* reference is at ¶36, where the affiant, Special Agent ("SA") Godier, states that he confirmed that Mirabal was listed as the renter of the storage unit and that it was paid through April 30, 2013. The truck was mentioned another time in the affidavit, in

---

[2] Ms. Anaya is the mother of co-defendant Dominic Anaya. *See* Doc. 134 at 3.

¶19, when the affiant stated he observed Mirabal get out of his truck on June 11, 2012 to retrieve an object from the rear passenger area of the truck, and then get into a vehicle belonging to a Michael Nieto. The affiant later observed Mirabal exiting Nieto's vehicle with nothing in his hands and return to his truck. Defendant points out that there is no indication that the item was contraband or any sort of illegal substance.

I.    **Whether the Affidavit is Supported by Probable Cause**

Defendant contends that the references in the affidavit do not support a finding of probable cause to believe that the storage unit is connected to any type of illegal activity or contains the fruits of any illegal activity, for several reasons: (1) the storage unit was surveilled only once by law enforcement, *see* Ex. A at 11, ¶ 29; (2) the affidavit does not indicate that Mirabal was moving anything into or out of the storage unit regularly; (3) neither Mirabal nor members of the alleged Mirabal DTO were observed going or coming out of the storage unit. In the reply brief, Defendant adds the argument that the information law enforcement included in the affidavit in support of the search warrant was stale.

The Government argues that there is ample factual support in the affidavit for a finding of probable cause, citing to specific portions of the affidavit such as:

- a May 31, 2012 surveillance observing Defendant driving the red GMC pickup truck to his residence at 2020 Desert Breeze, where his gray Chevrolet Silverado was also parked (Doc. 188-1, ¶¶8-9);

    o law enforcement agents had previously observed Defendant driving the Silverado to and from a drug deal on March 21, 2012, even though the vehicle was registered to co-defendant Dominic Anaya (Doc. 188-1, ¶7);

    o Agents learned that Defendant planned to drive to Santa Fe to deliver drugs to Michael Nieto based on intercepted phone conversations between Defendant and Nieto (*Id.,* ¶ 11);

    o Agents knew that Nieto had sold crack cocaine to a confidential source the previous day (*Id.*);

4

- o   Agents also intercepted phone conversations between Defendant and another confederate, Michael Jaramillo, whom agents knew to be a Santa Fe seller of Defendant's drugs, based on intercepted phone calls (*Id.*, ¶ 12);

- o   Agents learned that Defendant planned to visit Jaramillo in Santa Fe and collect an outstanding drug debt during the same day as Defendant's anticipated deal with Nieto, again based on intercepted phone calls (*Id.*);

- o   Surveillance agents observed Defendant and Anaya leave 2020 Desert Breeze in the Chevrolet truck and travel to the meeting locales discussed in the respective phone calls with Nieto and Jaramillo (*Id.*, ¶¶ 10-12);

- On June 11, 2012, agents intercepted another phone conversation between Defendant and Nieto in which Defendant asked Nieto what he needed, and Nieto replied "three" (which agents believed referenced a quantity of crack cocaine); agents observed Defendant travel in his GMC truck to a miniature golf park and meet with Nieto. Defendant retrieved an object from the rear passenger area of his GMC, then enter Nieto's vehicle; then Mirabal returned to his GMC truck with nothing in his hands (Doc. 188-1, ¶ 19);

- On June 26, 2012, agents learned through electronic interception that Defendant had rented a storage shed for his GMC truck at Global Storage, located at 7701 Bridge Blvd, Albuquerque, New Mexico. Doc. 188-1, ¶ 22. That same day, surveillance agents observed Defendant park his truck in this storage facility. *Id*.

The Government argues that, based on these observations and intercepted communications for the May 31st surveillance, it was reasonable to believe there was a "fair probability" that the red GMC truck would contain some indicia of trafficking or drug proceeds, since Defendant had driven the truck just prior to engaging in a drug deal and debt collection; and that it was reasonable to conclude that Defendant actually transported the drugs to his home in the GMC, before delivering them to Nieto. Also, with regard to the June 11, 2012 interception of the phone conversation, the Government argues that it was reasonable for agents to conclude that there was a "fair probability" that contraband or other evidence could be in the GMC because agents had personally witnessed what they believed to be a drug deal.

Defendant's chief objection to the affidavit is the staleness of the information gleaned through surveillance and intercepted communications that was used as a basis the search warrant

request months later.  Defendant also notes that there is a disconnect between the June 11, 2012 intercepted conversation relating to an alleged drug transaction involving the GMC truck, and the storage of the truck in the unit—particularly when the truck was taken out of the storage unit for repairs and supposedly returned some eight or nine months after the alleged drug transaction.  At the hearing, defense counsel distinguished the instant situation from one that involved alleged drug trafficking and a bank deposit box.  Counsel argued that since drug trafficking involves cash, it would be reasonable to establish a connection or nexus between illegal activity and a bank deposit box, where a storage unit does not necessarily carry similar implications.   The Government discounted Defense counsel's staleness arguments, noting that the appropriate inquiry was whether there was a nexus between the information in the affidavit regarding alleged drug activity, the GMC truck, and the storage unit.

    The Court agrees with the Government that the relevant question is whether there is a connection between the storage unit and alleged illegal activity, and also agrees that the nexus exists in Mirabal himself.   The affidavit contains information which provides evidence of at least a fair probability of Mirabal's involvement in ongoing drug trafficking both before and after June 11, 2012 and information that the GMC truck was used during the June 11, 2012 incident.  The affidavit states that Defendant rented the storage unit; the rental fees were paid through April of 2013; and that the truck was stored in the unit for a period of time.  Further, Defendant told Ms. Anaya in late June 2012, just weeks after the intercepted communications regarding a drug transaction that allegedly occurred on June 11, 2012, that "he had rented a storage shed for his truck and that the storage shed was located at Unser and Bridge" [which is] the location of Global Storage at 7701 Bridge Blvd., Albuquerque, New Mexico.  Ex. A (Aff.), ¶22.   Through

surveillance, agents observed Mirabal take the truck to this location. *Id.* Thus, a connection between illegal drug activity, the GMC truck and the storage unit are not "disconnected" at all.

Probable cause does not require certainty. *See U.S. v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) (Probable cause "is a matter of probabilities and common sense conclusions, not certainties"). A finding of probable cause does not rise or fall on a formulaic number of surveillances conducted by law enforcement, or the number of times Defendant was required to use the truck for what agents believed to be illegal activities. The standard does not even require that an officer's suspicion about the presence of contraband be "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983); *United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011); *see also United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) ("[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark."); *United States v. Limares*, 269 F.3d 794, 798 (7th Cir. 2001) ("'[P]robable cause' is something less than a preponderance"). Probable cause requires only that an affidavit show a "fair probability that contraband or evidence of criminal activity would be found in a given place." *Illinois v. Gates*, 462 U.S. 213 (1983). The affidavit in question satisfies this standard: the facts in the affidavit connect Mirabal to alleged illegal drug trafficking, to the use of his GMC truck in that activity, and to the storage of that truck in the unit that was searched. Given these circumstances, it was reasonable for law enforcement agents to believe that contraband or evidence of this criminal activity would be inside the storage unit.

## II. Good Faith Exception

Based on the Court's finding that Defendant's Fourth Amendment rights were not violated, there is no reason for the Court to consider whether the exclusionary rule should apply,

and therefore no need to consider whether law enforcement agents are entitled to rely on the good faith exception.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Fruits of Illegal Search of Storage Unit **(Doc. 188)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE