# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                             Criminal No. 13-01152 WJ

GABRIEL MIRABAL,

    Defendant.

### *SEALED* MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION TO SUPPRESS THE FRUIT OF TITLE III WIRETAP INTERCEPTION BASED ON MATERIAL OMISSIONS

THIS MATTER comes before the Court upon Defendant's Renewed Motion to Suppress the Fruit of Title III Wiretap Interception Based on Material Omissions, filed November 9, 2015 **(Doc. 263)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is DENIED. Moreover, the Court finds that there is no need to have a hearing on this motion, as to do so would be a complete waste of the Court's time and resources as well as those of the parties.

### BACKGROUND

The Court previously denied Defendant's First Motion to Suppress the Fruits of a Title III wiretap, rejecting Defendant's argument that the wiretap was illegal because it lacked probable cause. See Doc. 197. Defendant incorporates the factual allegations from that motion, and the Court incorporates the factual background and information from that Memorandum Opinion and Order, without restating them here. *See* Doc. 197. In short: in March of 2012, the DEA began an investigation of Defendant Mirabal (also known as "Smiley"), Dominic Anaya, Michael

Jaramillo, and other individuals suspected of being members of what was known as the Mirabal Drug Trafficking Organization ("DTO"). From March to May of 2012, agents attempted to further their investigation through the use of various investigative methods, including but not limited to visual surveillance, use of at least one confidential informant and controlled purchases of crack cocaine, attempted trash collection and attempted introduction of an undercover agent. On May 30, 2012, DEA Special Agent ("SA") Christopher Scott Godier submitted an Affidavit to the Honorable James A. Parker, Senior United States District Judge, in support of an Application by the United States for an Order authorizing the interception of wire and electronic communications of Mirabal and other subjects yet unknown. The purpose of the application was to gather evidence with regard to these individuals' involvement in drug trafficking and money laundering offenses.

## DISCUSSION

In the instant motion, Defendant renews the first motion to suppress, contending (1) the application for the initial wiretap ("Target Telephone," or "TT-1") did not demonstrate necessity based on material omissions of fact that would have altered the necessity finding made by this Court; and (2) the applications for the remaining wiretaps also had material omissions that compromise the necessity determination of the issuing judge. Defendant also requests an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978).

I. **Legal Standard**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522 governs the requirements and procedures of judicially authorized wiretapping. *Berger v. New York,* 388 U.S. 41, 60 (1967) (judicially authorized wiretapping is "a most important technique‖ in the investigation of organized crime"). The Title III statute requires that an

application for an order authorizing the interception of wire communications "shall be made in writing upon oath or affirmation to a judge[.]" 18 U.S.C. § 2518(1). Such an application must include "a full and complete statement of the facts and circumstances relied upon by the applicant . . . to justify his belief that an order should be issued[.]" 18 U.S.C. § 2518(1)(b). These applications draw their factual basis from an affidavit offered by an agent or officer familiar with the facts and circumstances of the investigation. The authorizing judge will then enter an ex parte order allowing interception of telephonic communications over the subject phone if he concludes from the facts and circumstances set forth in the wiretap application that there is probable cause and necessity as formulated in the statute.[1]

A defendant faces a very difficult burden when moving to suppress evidence obtained from a wiretap. "[A] district court's wiretap authorization order is presumed proper, and the defendant bears the burden of overcoming this presumption." *U.S. v. Killingsworth*, 117 F.3d 1159, 1163 (10th Cir. 1997). 18 U.S.C. § 2518(10)(a) sets forth the procedure a defendant must follow to challenge the admissibility of evidence obtained through judicially authorized wiretaps. An "aggrieved party . . . may move to suppress the contents of any [intercepted] wire . . . communication . . . or evidence derived therefrom, on the grounds that . . . (i) the communication was unlawfully intercepted, (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." 18 U.S.C. § 2518(10)(a). Overall, the "burden on the government [to demonstrate necessity] is not great." *United States v. Verdin-Garcia*, 516 F.3d 884, 890 (10th Cir. 2008) (internal quotation omitted). A district court's findings as to the necessity of a wiretap is reviewed for abuse of discretion. *U.S. v. Zapata*, 546 F.3d 1179, 1185 (10th Cir. 2008).

---

[1] Language from the statute is included in the Court's Memorandum Opinion and Order at 7-8. Doc. 197.

The gist of Defendant's argument is that the DEA agents' failure to monitor "after hours" calls intercepted on Defendant's phone was a material omission which resulted in unnecessary wiretap interception. The Affidavit for TT-1 stated that the reason for the wiretap interception was because "evidence collected thus far has failed to identify the head of this drug organization, the identities of other members of the conspiracy, or the locations utilized to stash drugs, drug proceeds and other contraband utilized by this organization." *See* Affidavit [Doc. 100-2], ¶ 35. Defendant contends that the Affidavit for the extension to the first wiretap omitted that 279 calls from the first wiretap were not monitored because they were intercepted after hours; thus, the subsequent extensions may not have been necessary. Defendant similarly argues that agents failed to monitor a total of 1,785 calls because they were intercepted after hours.

I. **Ainsworth Affidavit**

The bulk of Defendant's argument relies on an affidavit by Gary Ainsworth, a retired ATF (Alcohol, Tobacco and Firearms) agent, offered by Defendant as a "law enforcement expert." Mr. Ainsworth is not a fact witness and did not participate in this investigation in any way. What Mr. Ainsworth has provided is a 14-page affidavit which includes a listing of calls not monitored by agents for the initial wiretap and the extensions. Doc. 263-1. He claims that a total of 1,785 calls were not monitored because of the time of day these calls occurred, and that they easily could have been monitored by having Special Agents working overtime. *Id.*, ¶ 17. Mr. Ainsworth concludes, in his "opinion," that the failure to monitor these calls "on the ground that they were simply made after hours, falls below what [he has known] to be standard practice in federal law enforcement and therefore is not a reasonable practice." *Id.*, ¶ 24.

The Government submits that there is a threshold question as to Mr. Ainsworth's qualifications to render an opinion about the method and means in which a DEA wiretap should

be conducted, and the Court agrees. While neither party specifically references the Court's gatekeeping role under Rule 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc*., nevertheless the Court finds that Mr. Ainsworth's submissions is subject to scrutiny under this standard. In *Daubert,* the United States Supreme Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. 509 U.S. 579, 597 (1993); *see also Dodge v. Cotter Corp*., 328 F.3d 1212, 1221 (10th Cir. 2003) (trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline). The Court must not only determine whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion, but also determine whether the expert's opinions are "reliable" under the principles set forth under *Daubert*, 509 U.S. 579, and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *see Ralston v. Smith & Nephew Richards, Inc*. 275 F.3d 965 (10th Cir. 2001).

  The Court finds that Mr. Ainsworth does not necessarily have the qualifications to critique the way the DEA conducted this wiretap investigation. Mr. Ainsworth states that he has had over twenty-five years of law enforcement and private investigative experience in a variety of cases, including "wiretap investigations." Doc. 263-2 at 1. However, while Mr. Ainsworth may be qualified to render an expert opinion as to certain aspects of firearms and firearm investigations (as supported by his Tazer certification and coal mining safety coursework, *see* Doc. 263-2 at 7-8), there is no mention his 12-page curriculum vitae that he ever was an affiant in a wiretap case. Even if his qualifications meet the minimal gatekeeping threshold, the Court questions the reliability of some of his opinions. For example, in criticizing the DEA's lack of monitoring during low intensity time periods, Mr. Ainsworth glibly points to the availablility of

overtime pay ("Law Enforcement Availability Pay" or "LEAP")[2] to cover the additional time needed for DEA Special Agents to monitor after-hours calls:

> I am mystified as to the inability of DEA to monitor "after hours calls". It is my knowledge and experience that **LEAP was/is intended for use by special agents in investigations, such as this, when investigative activity occurs after "banker's" hours.**

Doc. 263-1, ¶ 17 (emphasis added).  However, as the Government points out, someone with even a rudimentary understanding of DEA wiretap would understand that special agents do not listen to the calls as they are initially intercepted; rather, this task is left to a team of contractors who are typically fluent in both English and Spanish.  These contractors are hourly employees that are entitled to overtime pay and are not salaried DOJ employees subject to LEAP.

Mr. Ainsworth also asserts that the various wiretaps have missed over a thousand "calls" after hours, which the Government contends is untrue because a vast majority of these "calls" do not consist of conversations.  The Court agrees that Mr. Ainsworth's description of these allegedly missed interceptions is overblown and overinclusive and as such is of minimal relevance or help to the Court.  *See United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (An expert's testimony is admissible only if it is potentially helpful).  Also lacking in Mr. Ainsworth's "opinion" is an example of even a single New Mexico DEA investigation that actually utilized 24-hour monitoring, despite Mr. Ainsworth's representation that 24-hour monitoring was "standard" practice.

The Court finds Mr. Ainsworth's affidavit to be an exaggeration of the DEA agents' asserted shortcomings, indicating a wholesale lack of understanding as to DEA wiretap practice and lack of familiarity with the very subject matter on which he renders an opinion.  As a result, the Court is not required to consider Mr. Ainsworth's affidavit statements under Rule 702 and

---

[2]  LEAP is an increase to Special Agents' base pay to account for unexpected overtime.

*Daubert*. However, as the Court discusses next, Defendant's substantive arguments lack merit, whether considered on their own or even as bolstered by Mr. Ainsworth's opinion.

## II.     Material Omissions

Defendant contends that material omissions were made in the first application for wiretap interception. Specifically, had the affidavit stated that it would not be monitoring certain phone calls that it deemed after hours, the necessity requirement would not have been met. In addition, Defendant contends that the wiretap extensions (TT-1 Extension, TT-2, TT-3 and TT-4) violate Title III for the same reason due to similar material omissions about calls not being monitored, even if the first application was legal. This argument is shaky from the start.

First, Defendant would have to presuppose that Judge Parker *assumed* that the wiretap would be monitored 24 hours a day. In making this assumption, Defendant switches the burden to the Government, either to prove that a 24-hour a day wiretap is *not* standard or to explain an alleged deviation from this imagined standard. The Government responds as expected: a DEA wiretap of a single phone line is rarely if ever monitored on a 24-hour basis, and that in over 25 years since the last reported 24-hour wiretap in 1989, hundreds of wiretaps that were conducted through the Albuquerque District Office were not monitored 24 hours a day. Thus, Defendant asks the Court to believe that Judge Parker, an experienced district judge, would have been unaware that the DEA as a matter of standard practice, does not monitor wiretaps 24 hours a day (even more unbelievable is the notion that Judge Parker would have labored under this misapprehension for the last 25 years).

Second, Defendant exaggerates the actual number of calls that went unmonitored. Defendant arrived at his tally of 1,785 "calls" by compiling all of the line sheets that carry the designation of "After Hours Call—Not Monitored." The Government explains that "call" does

not necessarily mean two parties speaking to each other on the phone. The numbering of wiretaps is done in "sessions," and a "session" is far broader in scope than a phone call. *See* Doc. 279 at 6, n.3 for more detailed description of "session" in context of software usage). By way of example, a group of 100 sessions from TT-1 (Sessions 4600 through 4700) revealed that only 13 sessions involved actual dialed calls, and only *seven* of those dialed calls actually resulted in conversation between two parties. In other words, Defendant's representation of "missed" after-hours calls is a rather blatant and misleading overstatement.

Third, Defendant's motion ignores the practical realities of narcotics investigations. Defendant's suggestion of a 24-hour a day monitoring means adding an 8-hour shift per day, or a 33 percent increase in the cost of staffing the wire with monitors, excluding overtime. An additional period of monitoring would have meant fewer interceptions per dollar spent, since as the Government point out, Mr. Mirabal would be asleep for most of the additional shift. Federal funding is finite, and whether or not additional funding would have been welcome, the available funding had to be used most efficiently. Defendant's call for additional funding to monitor additional calls is wishful thinking because the only question here is whether Defendant's constitutional rights were violated—and the Court finds that they were not.

Even assuming that failure to explicitly state that the wiretap interception would not be monitored 24 hours a day constitutes a "material omission" under *Franks v. Delaware*, 438 U.S. 154 (1978), it is difficult to fathom how this would fundamentally alter the necessity determination for the wiretap. Under *Franks*, a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. 438 U.S. at 155–56. A defendant is not entitled to a *Franks* hearing unless he makes a substantial showing that the affidavit contains intentional or reckless

false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. *Id.* It is not enough for the defendant to show that information was omitted from the affidavit or that the information wasn't completely true. *U.S. v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989); *U.S. v. Green*, 175 F.3d 822, 828 (10th Cir. 1999) (noting that the *Franks* standard applies to affidavits in support of Title III intercepts). The test is whether the affidavit supports a finding of probable cause without the allegedly false information. *U.S. v. Morehead*, 959 F.2d 1489, 1498 (10th Cir.) on reh'g sub nom. *U. S. v. Hill*, 971 F.2d 1461 (10th Cir. 1992).  In other words, the challenged information must be *material*. *U.S. v. Barrera,* 843 F.2d 1576, 1580 (10th Cir. 1988).

      The Government observes that, in considering the necessity for the initial interception (TT-1), the Court was charged with analyzing the efficacy of the investigative techniques undertaken *before* the request for the interception. This determination was based on both the realized and theoretical shortcomings of physical surveillance, confidential information and cooperating sources, pole cameras, undercover agents, search warrants, examination of discarded trash, grand jury or administrative subpoenas, interviews of subjects, toll records, pen records, trap and trace information, cell site and precision location information, tracking devices, and E-911 location data, and how these techniques would be insufficient, standing alone, to accomplish all of the goals of the investigation. The hours per day that the wiretap would be monitored after this necessity determination had been made does not retroactively alter the insufficiency of these investigative techniques, nor alters Judge Parker's determination that necessity existed at the time the affidavit was presented..  Defendant's motion essentially is an attempt to put the proverbial cart before the horse, since the necessity determination for the initial wiretap was determined even before the number of calls monitored would be decided.

Defendant requests that the Court hold a *Franks* hearing to determine if there is any basis for the agents' failure to monitor the identified phone calls because they were made after hours. The Court denies the request. As the Supreme Court has held, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding a probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72. There was more than sufficient content in the warrant affidavit to support the initial wiretap notwithstanding the asserted failure to state that calls would not be monitored 24 hours a day. The agents' alleged failure to monitor after-hours calls does not attenuate or disturb the Court's initial necessity findings or the Court's findings regarding the wiretap extensions. Defendant has not satisfied his burden to question these findings. Accordingly, Defendant's motion is DENIED.

As a final matter, the Court has filed this Memorandum Opinion and Order under seal because the Government filed its response under seal. However, the Court is inclined to make this Order and the Government's pleading public documents. The Government is hereby ordered to advise the Court WITHIN FIVE (5) days from the entry of this Order as to the basis for keeping these pleadings sealed. The Defendant may also state his position on keeping these pleadings sealed within the same five (5) day time period.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE